UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOSEPH HENRY, FRANCIS FALLS, and STEPHAN NAMISNAK, individuals, | ) ) ) | Case No: |
| Plaintiffs, | ) ) | Judge: |
| v. | ) ) | Magistrate Judge: |
| NEW ORLEANS CITY, | ) ) ) | |
| Defendant | ) ) ) | |

## COMPLAINT

Plaintiffs, JOSEPH HENRY, FRANCIS FALLS, and STEPHAN NAMISNAK, individuals, by and through their undersigned counsel, hereby file this Complaint and sue the NEW ORLEANS CITY ("DEFENDANT"), as the entity responsible for the curb cuts in New Orleans, for injunctive and declaratory relief, damages (nominal and compensatory), and attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. ("Americans with Disabilities Act" or "ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. ("Rehabilitation Act") and states as follows:

## BACKGROUND

1.    For the purposes of this Complaint, the term "Curb Ramp" shall refer to a short ramp cutting through a curb at a pedestrian crossing that provides an accessible route that people with disabilities can use to safely transition from a roadway to a sidewalk and vice versa. To be clear, this Complaint solely pertains to the lack of Curb Ramps in the City of New Orleans. While this lawsuit refers to sidewalks as well as curbs, this lawsuit does not pertain to the overall condition of the sidewalks within the City of New Orleans.

2.     On June 15, 2013, the Department of Public Works ("DPW") for the City of New Orleans issued an Americans with Disabilities Act Transition Plan ("Transition Plan") to "address accessibility needs for persons with disabilities living and visiting the city."[1] On March 7, 2018, DEFENDANT issued an updated version of the Transition Plan.[2]

3.     DEFENDANT, through the DPW, is the entity responsible for authorizing the planning, design, construction, operation, and maintenance of public street rights-of-way and related activities.

4.     The Transition Plan clearly states that the New Orleans DPW is "the entity responsible for authorizing the planning, design, construction, operation, and maintenance of public street rights-of-way and related activities."[3]

5.     DEFENDANT acknowledged its obligations under the ADA by stating on its ADA webpage that it is "adamant" about the ADA and that it is "is striving to make all City programs, services and facilities accessible to all persons, especially those with disabilities."[4]

6.     Despite its stated commitment to the ADA, DEFENDANT has and continues to violate the ADA by failing to provide equal access at its curb cuts for disabled patrons, including Plaintiffs, by failing to install compliant Curb Ramps.

7.     Upon information and belief, many, if not all, of the curbs in New Orleans are owned by DEFENDANT.

---

[1] https://www.nola.gov/dpw/ada-transition-plan/ (last accessed January 19, 2021).
[2] https://www.nola.gov/dpw/documents/ada-transition-plan-3-7-18-update/ (last accessed January 19, 2021), hereinafter referred to as "Transition Plan."
[3] Transition Plan at 6.
[4] https://www.nola.gov/ada/ (last accessed January 19, 2021).

8.     Upon information and belief, to the extent DEFENDANT does not own portions of the curbs, DEFENDANT nonetheless operates those curbs as it has the right to repair or rebuild those curbs under the local municipal code.

9.     Pursuant to Sec. 146-190 of the New Orleans Code of Ordinances, in the case of existing sidewalks, when the installation of a sidewalk is in the interest of public safety, or when a property owner creates or causes a defect in an existing sidewalk, the director of the DPW may pave or repave such sidewalk. Upon the determination by a hearing officer that a property owner created or caused a sidewalk defect adjacent to their property, the director of the DPW works shall issue a statement of costs against the property owner for the cost of such work. Failure of the property owner to pay the costs shall result in a lien against the property.

10.     Upon information and belief, this is equally applicable to the curbs in the City of New Orleans.

11.     Upon information and belief, to the extent DEFENDANT does not own portions of the sidewalks and curbs, DEFENDANT nonetheless operates those sidewalks and curbs by requiring their usage by the public.

12.     Pursuant to the New Orleans Code of Ordinances, where a sidewalk is provided, it is illegal for any pedestrian to walk along or upon an adjacent roadway. See Sec. 154-1607 of the New Orleans Code of Ordinances.

13.     Therefore, the sidewalks and curbs in the City of New Orleans are not only a program or service offered by DEFENDANT for use by the general public, but actually constitute a compulsory government service which DEFENDANT requires that its citizens to use.

14.   Despite the compulsory nature of DEFENDANT's sidewalk and curbs program, DEFENDANT has and continues to violate Title II of the Americans With Disabilities Act ("ADA") and the Rehabilitation Act of 1973 by failing to bring its existing curbs into compliance with the requirements of the ADA by not installing Curb Ramps.

15.   With regards to PLAINTIFFS' request for nominal damages, it is their position that even an award of nominal damages would confer significant civil rights to the public, as a judgment in her favor against DEFENDANT, regardless of the amount, would deter DEFENDANT from discriminating against individuals with disabilities in the future.

## JURISDICTION AND PARTIES

16.   This is an action for declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq*., (see also 28 U.S.C. § 2201 and § 2202), and for Plaintiff's claims arising from 29 U.S.C. §794 *et seq*. (Rehabilitation Act). This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

17.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the DEFENDANT's Property, which is the subject of this action, is located in Orleans Parish, Louisiana.

18.   Plaintiff JOSEPH HENRY is a resident of the State of Louisiana, Orleans Parish.

19.   MR. HENRY is a qualified individual with a disability under the ADA. MR. HENRY has paraplegia due to a spinal cord injury.

20.   Due to his disability, MR. HENRY is substantially impaired in several major life activities. Specifically, MR. HENRY is unable to ambulate without assistance of a wheelchair.

21.     Plaintiff FRANCIS FALLS is a resident of the State of Louisiana, Orleans Parish.

22.     MR. FALLS is a qualified individual with a disability under the ADA. MR. FALLS has

         paraplegia as a result of a spinal injury.

23.     Due to his disability, MR. FALLS is substantially impaired in several major life

         activities. Specifically, MR. FALLS is unable to ambulate without assistance of a

         wheelchair.

24.     Plaintiff STEPHAN NAMISNAK is a resident of the State of Louisiana, Orleans Parish.

25.     MR. NAMISNAK is a qualified individual with a disability under the ADA. MR.

         NAMISNAK has Muscular Dystrophy.

26.     Due to his disability, MR. NAMISNAK is substantially impaired in several major life

         activities. Specifically, MR. NAMISNAK is unable to ambulate without assistance of a

         wheelchair.

27.     Upon information and belief, DEFENDANT is the political entity responsible for

         owning, administering, operating, and maintaining the sidewalks and curbs within the

         City of New Orleans. As discussed above, however, to the extent DEFENDANT does not

         own some of the sidewalks or curbs in the City of New Orleans, it is nonetheless

         responsible for their construction, repair, replacement, and/or maintenance.

28.     DEFENDANT is responsible for complying with the obligations of the ADA.

29.     All events giving rise to this lawsuit occurred in Orleans Parish, Eastern District of

         Louisiana.

## COUNT I
## VIOLATION OF TITLE II OF THE ADA

30.  PLAINTIFFS reallege and reaver paragraphs 1-28 as if they were expressly restated herein.

31.  Upon information and belief, DEFENDANT is a public entity, subject to the ADA, and is responsible for the property which forms the basis of this suit: the curbs and directly adjacent sidewalk areas which are located in New Orleans, Louisiana (hereinafter referred to as the "Property").

32.  The Property provides an area where citizens can walk outside of the public way and are supposed to serve as a transition from the street to the sidewalk, outside of the dangers of vehicular traffic.

33.  When DEFENDANT constructs, repairs, replaces, or maintains sidewalks and curbs, it promotes the general public's convenience by overcoming a collective action problem and allowing citizens to focus on other ventures. Moreover, when DEFENDANT builds or alters a sidewalk or curb, it helps meet a general demand for the safe movement of people and goods.

34.  In common understanding, DEFENDANT provides a service to its citizens when it supervises curbs in the City of New Orleans. Additionally, by requiring its citizens to use the Property under penalty of fine, DEFENDANT makes this governmental service compulsory.

35.  As stated by the Fifth Circuit in the case of *Frame v. City of Arlington* "If a city official authorizes a public sidewalk to be built in a way that is not readily accessible to disabled individuals without adequate justification, the official denies disabled individuals the

benefits of that sidewalk no less than if the official poured the concrete himself."[5]

36.     Upon information and belief, DEFENDANT develops and provides the services and programs offered at the Property.

37.     PLAINTIFFS have used, or attempted to use, numerous sidewalks across the City of New Orleans in the past.

38.     MR. HENRY lives on Fig Street in New Orleans; MR. FALLS lives on Clio Street in New Orleans; and MR. NAMISNAK lives on Pacific Avenue in New Orleans. PLAINTIFFS are residents of the City of New Orleans and they travel throughout the City in the course of their daily activities.

39.     PLAINTIFFS have tried to use the architectural features offered at numerous sidewalks and curbs but have experienced great difficulty as a result of noncompliant features, including but not limited to curbs without Curb Ramps.

40.     PLAINTIFFS intend on attempting to utilize the sidewalks and curbs offered by DEFENDANT in the near future, but fear that they will continue to encounter great difficulty as a result of the lack of Curb Ramps.

41.     PLAINTIFFS tried to use the architectural features offered Property, but experienced great difficulty as a result of the lack of Curb Ramps.

42.     As a result of DEFENDANT's discrimination, PLAINTIFFS have been unable to fully utilize the sidewalks which are offered by DEFENDANT. Instead, PLAINTIFFS are often forced to roll their respective wheelchairs in the public street due to the lack of Curb Ramps in the City of New Orleans.

---

[5] 657 F. 3d 215, 226 (5th Cir. 2001).

43.     Many of the barriers discussed below put PLAINTIFFS in danger of physical injury and personal harm. For example, PLAINTIFFS are at risk of physical injury and personal harm as a result of having to roll their wheelchairs in the street. When rolling their wheelchairs in the street, PLAINTIFFS are low to the ground and could be struck by passing vehicles.

44.     Further, PLAINTIFFS are at risk of criminal deprivation of their rights in the form of a monetary fine. As discussed above, pursuant to Sec. 146-190 of the New Orleans Code of Ordinances, PLAINTIFFS could be fined for rolling their wheelchairs in the street when they are unable to utilize the otherwise inaccessible sidewalks offered by DEFENDANT.

45.     PLAINTIFFS are aware that at any moment while riding their wheelchair in the street, when they are unable to utilize the otherwise inaccessible sidewalks offered by DEFENDANT, they could be ticketed by a police officer. PLAINTIFFS are also aware that the police officer has the complete discretion as to whether to issue them a ticket.

46.     Therefore, disabled individuals like PLAINTIFFS are faced with an impossible choice: They can either risk personal harm by attempting to use inaccessible sidewalks and curbs (by possibly tipping over) or they can risk being subjected to a criminal fine for riding their wheelchair in the public street or being hit by a passing vehicle. By failing to provide accessible sidewalks, DEFENDANT discriminates against PLAINTIFFS and puts them at risk of serious personal injury or death.

47.     The barriers discussed below are excluding PLAINTIFFS from the programs and activities offered at the Property.

48.     PLAINTIFFS plan to and will visit the Property in the future to determine if the barriers

8

to access alleged herein have been modified.

### City of New Orleans: ADA Transition Plan for Public Rights-of-Way

49.     On June 15, 2013, the DPW issued the Transition Plan with a stated purpose to "ensure that facilities for pedestrian circulation and use located in the public right-of-way are readily accessible to and usable by pedestrians with disabilities in accordance with the Americans with Disabilities Act (ADA) and the U.S. Access Board Public Right of Way Accessibility Guidelines (PROWAG)."[6]

50.     The Transition Plan included a prioritization methodology to determine which intersections would receive the highest priority in addressing accessibility needs by adding ADA compliant Curb Ramps.[7] Intersections were prioritized based on important land uses, including their proximity to major roadways, government buildings, major commercial centers, and transit centers.[8] The DPW then collaborated with other agencies and organizations to conduct a geospatial analysis and rank priority intersections for accessibility improvements throughout New Orleans by creating ADA compliant Curb Ramps. The result was a set of ranked intersections with "priority areas."[9]

51.     The priority areas include Algiers Point, Canal St./Mid City, Carrollton, Central Business District, Esplanade and Wisner, French Quarter, Gentilly Blvd, Lower Garden District, Martin Luther King Blvd, Medical District, Methodist Hospital, St Charles at Tulane/Loyola, St Claude and Franklin, and Touro.[10]

---

[6] Transition Plan at 5.
[7] Transition Plan at 8.
[8] Transition Plan at 8.
[9] Transition Plan at 9.
[10] Transition Plan at 9.

52.   Within each priority area, a separate priority level was assigned, ranked 1-6, with a separate time horizon for the completion of each respective priority level.

| Priority Level | Time Frame |
|---|---|
| 1 | 3 years (2012-2015) |
| 2 | 5 years (2012-2017) |
| 3 | 10 years (2012-2022) |
| 4 | 15 years (2012-2027) |
| 5 | 25 years (2012-2037) |
| 6 | 35 years (2012-2047) |

53.   The list of specific curbs scheduled for remediation in Priority Level 1 is provided in Appendix G of the Transition Plan:[11]

54.   The Transition Plan does not contain detailed schedules for specific curbs in Priority Levels 2-6.

55.   On September 25, 2020, undersigned counsel sent a public records request to the City of New Orleans, requesting the schedule for Priority Levels 2-6. On September 29, 2020, a representative of the City Attorney's Office responded that the City of New Orleans does not have records responsive to the request and that the DPW advised that no such schedule exists.

56.   Upon information and belief, DEFENDANT has failed to identify which curbs it has designated for remediation outside of the curbs identified in Priority Level 1.

---

[11] Transition Plan at 37.

57.     DEFENDANT's surveyors identified Curb Ramps that are inaccessible at the below intersections in and around the Martin Luther King Blvd priority area and assigned a date for scheduled completion:[12]

| Target area | Street | Cross Street | Intersection ID | # of ramps to construct /improve | Signal | State road | Date of scheduled completion |
|---|---|---|---|---|---|---|---|
| Martin Luther King Blvd | S Claiborne Avenue | Thalia Street | 8455 | 2 | - | Yes | Dec-11 |
| Martin Luther King Blvd | Martin Luther King | S Claiborne Avenue | 8509 | 4 | Yes | Yes | Dec-11 |
| Martin Luther King Blvd | S Derbigny Street | Josephine Street | 8534 | 5 | - | - | Dec-13 |
| Martin Luther King Blvd | Martin Luther King | Willow Street | 8603 | 8 | - | - | Dec-13 |
| Martin Luther King Blvd | S Claiborne Avenue | Josephine Street | 8628 | 4 | - | Yes | Dec-11 |
| Martin Luther King Blvd | Martin Luther King | Clara Street | 8737 | 8 | - | - | Dec-13 |
| Martin Luther King Blvd | Terpsichore Street | Magnolia Street | 8851 | 5 | - | - | Dec-13 |
| Martin Luther King Blvd | Martin Luther King | Magnolia Street | 8853 | 8 | - | - | Dec-13 |

---

[12] Transition Plan at 77.

| Martin Luther King Blvd | Martin Luther King | Freret Street | 8961 | 6 | - | - | Dec-13 |
|---|---|---|---|---|---|---|---|
| Martin Luther King Blvd | Martin Luther King | Simon Bolivar Avenue | 9324 | 12 | Yes | - | Dec-13 |
| Martin Luther King Blvd | S Claiborne Avenue | Thalia Street | 8509B | 2 | - | Yes | Dec-11 |
| Martin Luther King Blvd | Martin Luther King | S Robertson Street | 8853B | 6 | - | - | Dec-13 |
| Martin Luther King Blvd | Martin Luther King | Lasalle Street | 9324B | 8 | - | - | Dec-13 |
| Martin Luther King Blvd | Martin Luther King | S Liberty Street | 9324C | 2 | - | - | Dec-13 |
| Martin Luther King Blvd | Simon Bolivar Avenue | Thalia Street | 9324D | 8 | - | - | Dec-13 |
| Martin Luther King Blvd | Martin Luther King | Saratoga Street | 9324E | 8 | - | - | Dec-13 |
| Martin Luther King Blvd | Simon Bolivar Avenue | Terpsichore Street | 9324F | 8 | - | - | Dec-13 |
| | | | **TOTAL** | 104 | | | |

58.   As illustrated in the above table, the accessibility improvements to Martin Luther King Blvd were set to be completed by December of 2011 and 2013, respectively.

59.   Upon information and belief, more than nine and seven years respectively past DEFENDANT's own deadline, the overwhelming majority of the improvements scheduled in the Martin Luther King Blvd priority area have not been completed and these intersections remain inaccessible to individuals who use wheelchairs for mobility due to the lack of Curb Ramps.

60.     Surveyors identified Curb Ramps that are inaccessible at the below intersections in and

around the Algiers Point priority area and assigned a date for scheduled completion:[13]

| Target area | Street | Cross Street | Intersection ID | # of ramps to construct/ improve | Signalized | State road? | Date of scheduled completion |
|---|---|---|---|---|---|---|---|
| Algiers Point | Verret Street | Evelina Street | 7978 | 4 | - | - | Dec-14 |
| Algiers Point | Evelina Street | Olivier Street | 8020 | 4 | - | - | Dec-14 |
| Algiers Point | Evelina Street | Vallette Street | 8074 | 4 | - | - | Dec-14 |
| Algiers Point | Opelousas Avenue | Evelina Street | 8103 | 13 | - | - | Dec-14 |
| Algiers Point | Opelousas Avenue | Elmira Avenue | 8135 | 12 | - | - | Dec-14 |
| Algiers Point | Opelousas Avenue | Vallette Street | 8169 | 11 | - | - | Dec-14 |
| Algiers Point | Opelousas Avenue | Verret Street | 8175 | 11 | - | - | Dec-14 |
| Algiers Point | Opelousas Avenue | Belleville Street | 8176 | 11 | - | - | Dec-14 |
| Algiers Point | Slidell Street | Nunez Street | 8297 | 8 | - | - | Dec-14 |
| Algiers Point | Slidell Street | Verret Street | 8298 | 5 | - | - | Dec-14 |
| Algiers Point | Slidell Street | Elmira Street | 8299 | 4 | - | - | Dec-14 |
| Algiers Point | Seguin Street | Evelina Street | 8103B | 3 | - | - | Dec-14 |
| Algiers Point | Opelousas Avenue | Olivier Street | 8175B | 9 | - | - | Dec-14 |
| Algiers Point | Opelousas Avenue | Nunez Street | 8175C | 10 | - | - | Dec-14 |
| Algiers Point | Slidell Street | Vallette Street | 8298B | 5 | - | - | Dec-14 |
| | | | TOTAL | 114 | | | |

61.     As illustrated in the above table, the improvements to Algiers Point were set to be

---

[13] Transition Plan at 78.

completed by December 2014.

62. Upon information and belief, more than six years past DEFENDANT's own deadline, the overwhelming majority of the improvements in the Algiers Point priority area have not been completed and these intersections remain inaccessible to individuals who use wheelchairs for mobility.

63. Further, despite claiming in the Transition Plan that modifications in priority levels 2-6 will be completed, DEFENDANT has not even identified which intersections belong in in priority levels 2-6. For example, the Transition Plan states that Level 2 intersections will be modified by 2017, however there exists no listing of the intersections in Level 2.

64. Ultimately, when the curb program/service across the City of New Orleans is viewed in its entirety, it is not readily accessible to or usable by individuals with disabilities who use wheelchairs.

<u>Plaintiffs' Requests for Reasonable Accommodation/Modification</u>

65. On October 13, 2020, attorney Andrew Bizer sent DPW a request for reasonable accommodation/modification on behalf of MR. FALLS.

66. By and through MR. FALLS' letter, MR. FALLS explained the nature of his disability, his limitations, and his needed accommodations.

67. In his written request for accommodation, MR. FALLS requested that DEFENDANT install ADA compliant Curb Ramps at the following intersections:

    a. Martin Luther King Jr. Blvd & Willow Street
    b. Martin Luther King Jr. Blvd & Clara Street
    c. Martin Luther King Jr. Blvd & Magnolia Street
    d. Martin Luther King Jr. Blvd & Willow Street
    e. Martin Luther King Jr. Blvd & S. Robertson Street
    f. Martin Luther King Jr. Blvd & S. Liberty Street

      g.  Martin Luther King Jr. Blvd & Saratoga Street
      h.  Simon Bolivar Avenue & Martin Luther King Jr. Blvd
      i.  Simon Bolivar Avenue & Thalia Street
      j.  Simon Bolivar Avenue & Terpsichore Street

68.    Of note, the Curb Ramps at the above intersections were scheduled to be modified by December 2013 according to the Transition Plan.[14] Thus, seven years past the expected completion date, DEFENDANT has not met its own goals for ADA compliance.

69.    On October 13, 2020, attorney Andrew Bizer sent DPW a request for reasonable accommodation/modification on behalf of MR. NAMISNAK.

70.    By and through MR. NAMISNAK'S letter, MR. NAMISNAK explained the nature of his disability, his limitations, and his needed accommodations.

71.    In his written request for accommodation, MR. NAMISNAK requested that DEFENDANT install ADA compliant Curb Ramps at the following intersections:

      a.  Slidell Street & Nunez Street
      b.  Slidell Street & Verret Street
      c.  Opelousas Ave & Bouny Street & Evelina St. & Teche Street
      d.  Opelousas Ave & Verret Street
      e.  Opelousas Ave & Olivier Street
      f.  Opelousas Ave & Elmira Avenue
      g.  Evelina Street & & Olivier Street
      h.  Evelina Street & Verret Street
      i.  Pelican Avenue & Verret Street
      j.  Vallette Street & Alix Street
      k.  Verret Street & Alix Street
      l.  Morgan Street & Bouny Street (approach to the ferry)
      m.  Delaronde Street & Bouny Street (approach to the ferry)

72.    Of note, Curb Ramps at intersections a-h were scheduled to be modified by December 2014 according to the Transition Plan.[15] Thus, six years past the expected completion

---

[14] Transition Plan at 77.
[15] Transition Plan at 78.

date, DEFENDANT has not met its own goals for ADA compliance.

73. On October 13, 2020, attorney Andrew Bizer sent DPW a request for reasonable accommodation/modification on behalf of MR. HENRY.

74. By and through MR. HENRY'S letter, MR. HENRY explained the nature of his disability, his limitations, and his needed accommodations.

75. In his written request for accommodation, MR. HENRY requested that DEFENDANT install ADA compliant Curb Ramps at the following intersections:

   a. Fig Street & General Ogden Street
   b. Fig Street & Eagle Street
   c. Eagle Street & Pritchard Place
   d. Eagle Street & Apricot Street
   e. Leonidas Street & Apple Street
   f. Leonidas Street & Panola Street
   g. Leonidas Street & Spruce Street
   h. Leonidas Street & Cohn Street
   i. Leonidas Street & Green Street
   j. Leonidas Street & Birch Street
   k. Leonidas Street & Willow Street
   l. Willow Street & Joilet Street
   m. Willow Street & Cambronne Street

76. The intersections identified by PLAINTIFFS are not an exhaustive list of all inaccessible Curb Ramps that PLAINTIFFS have encountered in the City of New Orleans. Instead, they are a representative sample of the inaccessible intersections PLAINTIFFS have encountered through their travels as residents of the City of New Orleans. PLAINTIFFS require a full inspection of DEFENDANT's Property—or an exemplar inspection—in order to identify all the areas of non-compliance with the ADA.

77. In all of the aforementioned requests for accommodation/modification, PLAINTIFFS further requested that DEFENDANT develop a comprehensive plan for the installation of ADA complaint curb cuts throughout the City of New Orleans, allocate necessary

16

funding for the installation of said modifications, and engage in a good-faith, interactive dialogue with undersigned concerning PLAINTIFFS' requests for reasonable accommodation. PLAINTIFFS requested that DEFENDANT respond to their requests by December 31, 2020.

78.   According to certified mail return receipts, DEFENDANT received the requests for accommodation/modification on October 19, 2020.

79.   To date, DEFENDANT has not even bothered to respond to PLAINTIFFS' requests for accommodation/modification.

80.   By failing to even respond to PLAINTIFFS' requests for reasonable accommodation, DEFENDANT constructively denied said requests for accommodation.

81.   The barriers discussed below are excluding PLAINTIFFS from the ability to independently and safely use the sidewalks and curbs.

82.   PLAINTIFFS plan to and will visit the Property to determine if the barriers to access alleged herein have been modified.

83.   Upon information and belief, DEFENDANT has discriminated, and is continuing to discriminate, against PLAINTIFFS in violation of the ADA by excluding and/or denying PLAINTIFFS the benefits of its services, programs, and/or activities by failing to, *inter alia*, have accessible facilities within five (5) years of January 26, 1992. PLAINTIFFS' visits to the Property shows that the program, when viewed in its entirety, is not accessible.

84.   By and through its conduct detailed above, and its choice not to accommodate Plaintiffs despite their express request for an accommodation—or even respond to their requests for

17

accommodation—DEFENDANT committed intentional discrimination against PLAINTIFFS.

85. DEFENDANT has failed to provide Program Access for its sidewalks and curbs:

A. Failure to Modify Existing Sidewalks and Curbs to Make Them Accessible:

I. Pursuant to the Department of Justice Regulations published for the ADA: "A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 35 C.F.R. §35.150.

II. There are numerous curbs throughout the City of New Orleans which are completely lacking a Curb Ramp, as is set forth in 1991 ADAAG 4.7, *et. seq.* As a result of the lack of compliant Curb Ramps, PLAINTIFFS have encountered difficulties utilizing the curbs and sidewalks offered in the City of New Orleans. The lack of a Curb Ramps makes it impossible for a disabled patron to safely transition from the sidewalk to the street.

III. According to the Transition Plan, a total of 104 Curb Ramps in the Martin Luther King Blvd priority area need to be constructed or improved.[16]

IV. A total of 114 Curb Ramps in the Algiers Point priority area need to be constructed or improved.[17]

V. Upon information and belief, many of the intersections in the Leonidas and Hollygrove neighborhoods lack Curb Ramps, including but not limited to intersections along Leonidas Street, Fig Street, Eagle Street, and Willow

---

[16] Transition Plan at 77.
[17] Transition Plan at 78.

Street.

VI.     The above-referenced intersections are not an exhaustive list of the inaccessible intersections that PLAINTIFFS have encountered in the City of New Orleans. <u>PLAINTIFFS require a full inspection of DEFENDANT's Property—or an exemplar inspection—in order to identify all the areas of non-compliance with the ADA.</u>

VII.    On the whole, DEFENDANT has failed to modify its existing curbs so to that, when viewed in its entirety, the existing curbs in the City of New Orleans are accessible to and usable by individuals with disabilities.

86.  42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

87.  DEFENDANT has discriminated against PLAINTIFFS by denying them full access to the services, programs, and/or activities by failing to make its facilities readily accessible as required by U.S.C. §12132 and its implementing regulations 28 C.F.R. Part 35.101-35.190 *et. seq*.

88.  DEFENDANT has discriminated against PLAINTIFFS by denying them full access to the services, programs, and/or activities by failing to maintain its facilities in a readily accessible condition, as is required by 28 C.F.R. Part 35.133.

89.  DEFENDANT has discriminated, and is continuing to discriminate, against PLAINTIFFS in violation of the ADA by excluding and/or denying PLAINTIFFS the full

and equal benefits of its services, programs, and/or activities by failing to, inter alia, have accessible facilities. PLAINTIFFS personally experienced the numerous barriers to access on the Property discussed herein.

90.    28 C.F.R. § 35.130(4) states that "[a] public entity may not, in determining the site or location of a facility, make selections–(I) [t]hat have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination..."  DEFENDANT has violated this provision by providing its services, programs, and/or activities at an inaccessible facility.

91.    DEFENDANT discriminated against PLAINTIFFS by excluding them from participation in, and denying the benefits of, the services, programs, and/or activities at its Property because of PLAINTIFFS' disabilities, all in violation of 42 U.S.C. § 12132.

92.    Upon information and belief, DEFENDANT continues to discriminate against PLAINTIFFS by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, programs, activities, facilities, privileges, advantages or accommodations to individuals  with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, programs, and/or activities, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

93.    Upon information and belief, PLAINTIFFS have been denied access to, and have been denied the benefits of services, programs and/or activities of DEFENDANT's Property, and have otherwise been discriminated against and damaged by DEFENDANT because

of DEFENDANT's discrimination, as set forth above. PLAINTIFFS will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. Furthermore, as required by the ADA and other remedial civil rights legislation, to properly remedy DEFENDANT's discriminatory violations and avoid piecemeal litigation, PLAINTIFFS require a full inspection of DEFENDANT's Property—or an exemplar inspection—in order to catalogue and cure all the areas of non-compliance with the ADA.

94.    PLAINTIFFS have retained the undersigned counsel and are entitled to recover reasonable attorneys' fees, costs and litigation expenses from DEFENDANT pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.

95.    PLAINTIFFS are without adequate remedy at law and are suffering irreparable harm.

96.    Under the ADA, this Court is provided authority to grant PLAINTIFF'S injunctive relief including an order DEFENDANT to alter the Property to make those facilities, and/or programs, and/or activities, readily accessible and useable to PLAINTIFFS and all other persons with disabilities as defined by the ADA.

## COUNT II
## VIOLATION OF THE REHABILITATION ACT

97.    PLAINTIFFS adopt and re-allege the allegations contained in paragraphs 1-92 as if fully stated herein.

98.    PLAINTIFFS bring this claim against DEFENDANT, based upon the Rehabilitation Act, 29 U.S.C. §794, *et seq*.

99.    The Rehabilitation Act provides that:

        No otherwise qualified individual with handicaps in the United

> States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794(a).

100. Upon information and belief, as set forth herein, DEFENDANT has violated the Rehabilitation Act by intentionally excluding PLAINTIFFS, solely by reason of their disabilities, from the participation in, and denying them the benefits of, and have otherwise subjected them to discrimination under, DEFENDANT's programs and activities.

101. Upon information and belief, a non-exclusive list of DEFENDANT's violations of the Rehabilitation Act and discriminatory conduct against PLAINTIFFS are evidenced by:

    A. Denying PLAINTIFFS access to, and the opportunity to participate in or benefit from, the aids, benefits, activities, programs, accommodations and services offered at the Property;

    B. By otherwise limiting PLAINTIFFS in the enjoyment of the rights, privileges, advantages and opportunities enjoyed by individuals without disabilities who receive DEFENDANT's aids, benefits and services;

    C. Making facility site or location selections that have the effect of discriminating against individuals with disabilities and excluding them from and denying them the benefits of, and defeating or substantially impairing the accomplishment of the objectives of, the services, programs and activities offered by DEFENDANT at the Property;

    D. Failing to administer services, programs and activities in the most integrated

setting appropriate to the needs of PLAINTIFFS;

E.      Excluding PLAINTIFFS from participation in, and the benefits of, DEFENDANT's services programs and activities as a result of DEFENDANT's Property being inaccessible to or unusable by PLAINTIFFS; and

102.   Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act at the Property which PLAINTIFFS are more likely than not going to encounter upon their future visits to the subject premises.  PLAINTIFFS bring this action:

A.      To redress injuries suffered as a result of DEFENDANT's discriminatory actions and inactions set forth herein;

B.      To reasonably avoid further and future injury to PLAINTIFFS as a result of DEFENDANT's ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the Act;

C.      To ensure DEFENDANT's Property is accessible as required by the relevant applications of Title II of the ADA;

D.      To be made whole and ensure future compliance; and

E.      To reasonably avoid future ADA and Rehabilitation Act litigation involving the same Property and under the same laws as set forth herein with its concomitant impact on otherwise scarce judicial resources.

103.   Only through a complete inspection of the Property and related facilities, undertaken by PLAINTIFFS and/or their representatives, can all said violations be identified and cured so as to ensure access for the disabled, the primary purpose of this action.

104.   Upon information and belief, DEFENDANT is the recipient of federal funds.

105. Upon information and belief, as the recipient of federal funds, DEFENDANT is liable for damages to PLAINTIFFS as a result of its acts and omissions constituting intentional discrimination.

106. DEFENDANT received PLAINTIFFS' respective requests for reasonable accommodation / modification and had an opportunity to accommodate PLAINTIFFS. Despite receipt of their written requests for reasonable accommodation / modification, DEFENDANT failed to provide PLAINTIFFS with any accommodation / modification in response to their requests.

107. DEFENDANT had knowledge of PLAINTIFFS' disability, limitations, and requested accommodations.

108. Despite knowledge of PLAINTIFFS' disability, limitations, and requested accommodations, DEFENDANT failed to accommodate PLAINTIFFS. DEFENDANT's failure to accommodate PLAINTIFFS when faced with their stated need constitutes intentional discrimination.

109. As set forth above, PLAINTIFFS have been denied access to, and without the relief requested herein, will continue to be denied the access to the goods, services, programs, facilities, activities and accommodations offered by DEFENDANT solely by reason of their disability, and have otherwise been discriminated against and damaged solely by reason of their disability as a result of DEFENDANT's Rehabilitation Act violations set forth above.

110. PLAINTIFFS have been obligated to retain undersigned counsel for the filing and prosecution of this action, and undersigned counsel is incurring reasonable attorneys'

fees, including costs and litigation expenses, incurred in this action.  PLAINTIFFS are entitled to recover those attorneys' fees, costs and litigation expenses from DEFENDANT pursuant to 29 U.S.C. §794(b).

111.   Pursuant to 29 U.S.C. §794(a) this Court is provided authority to grant PLAINTIFFS injunctive relief, including an order to alter the subject premises, facilities, services, activities, programs and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act; and, granting PLAINTIFFS compensatory damages for DEFENDANT's discriminatory actions.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray that:

A.   This Court issue a Declaratory Judgment that determines that DEFENDANT is in violation of Title II of the Americans with Disabilities Act;

B.   This Court issue a Declaratory Judgment that determines that the property, programs and activities owned, operated and administered by DEFENDANT is in violation of the Rehabilitation Act;

C.   This Court grant permanent injunctive relief against DEFENDANT Ordering it to cease violating the statutory and regulatory requirements of the ADA and RA and that it be Ordered to take steps to bring the Property into compliance with accessibility provisions and requirements of the ADA and RA;

D.   This Court grant permanent injunctive relief against DEFENDANT

including an Order to make all necessary alterations to the Property to make them readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require DEFENDANT to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities;

E.     This Court enter an Order directing Defendants to alter and modify the Property as appropriate and necessary to comply with the ADA and the Rehabilitation Act;

F.     This Court award PLAINTIFFS monetary damages (including nominal damages) pursuant to ADA and/or Rehabilitation Act for the harmed caused by DEFENDANT's intentional discrimination;

G.     This Court award PLAINTIFFS reasonable attorneys' fees, costs and litigation expenses pursuant to 29 U.S.C. § 794a(a)2 and 42 U.S.C. § 12205 and 28 C.F.R. § 35.175; and

H.     Such other relief as the Court deems just and proper, and/or is allowable under Title II of the ADA and the Rehabilitation Act.

Respectfully Submitted,


**BIZER & DᴇREUS, LLC**
*Attorneys for Plaintiff*

/s/ Andrew D. Bizer
ANDREW D. BIZER (LA # 30396)
GARRET S. DᴇREUS (LA # 35105)
EMILY A. WESTERMEIER (LA # 36294)
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
Email:  andrew@bizerlaw.com
          gdereus@bizerlaw.com
          ewest@bizerlaw.com